Richard I. Samuel (RIS-2197)
GOODWIN PROCTER LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 994-7892

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EON-NET, L.P., | Civil Action No. 2:05-cv-791-DMC-MF |
| Plaintiff/Counterclaim Defendant | |
| | **ORAL ARGUMENT REQUESTED** |
| v. | **MOTION DATE TO BE DETERMINED BY THE COURT** |
| FLAGSTAR BANCORP, | |
| Defendant/Counterclaim Plaintiff | |

**BRIEF IN SUPPORT OF DEFENDANT FLAGSTAR BANCORP'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1
STATEMENT OF FACTS .....................................................................................1
ARGUMENT..........................................................................................................5
I.   RELEVANT STANDARDS. .......................................................................5
II.  THIS ACTION SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF WASHINGTON. .................................................6
    A.    This Action "Might Have Been Brought" in the Western District of Washington. ..........................................................................6
    B.    This Court Should Exercise Its Discretion To Transfer this Action " for the Convenience of the Parties and Witnesses, in the Interest of Justice." ...................................................................................7
        1.    The Private Interests of the Parties Weigh In Favor of Transfer. ....8
            a.    The locus of operative facts weighs strongly in favor of transfer. ...............................................................................8
            b.    Eon-Net's choice of forum should be accorded little – if any – weight. ...................................................................9
            c.    Convenience of the witnesses favors transfer. ...................11
            d.    Convenience of the parties favors transfer..........................12
            e.    Location of relevant documents favors transfer..................13
            f.    Disruption to business activities weighs in favor of transfer ...............................................................................14
        2.    The Public Interest in the Administration of Courts and the Adjudication of Cases Weighs in Favor of Transfer. ....................15
            a.    Consideration of local interests favors transfer. .................15
            b.    Imposition of jury duty favors transfer. ..............................15
            c.    Congestion of courts favors transfer. ..................................15
III. THIS ACTION SHOULD BE TRANSFERRED OUT OF THE DISTRICT OF NEW JERSEY. .....................................................................16
CONCLUSION.....................................................................................................17

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

Acterna, L.L.C. v. Adtech, Inc.,
   129 F. Supp. 2d 936 (E.D. Va. 2001) .................................................................9

Ferens v. John Deere Co.,
   494 U.S. 516 (1990).........................................................................................15

Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,
   119 F. Supp. 2d 433 (S.D.N.Y. 2000)...............................................................9

Jumara v. State Farm Ins. Co.,
   55 F.3d 873 (3d Cir. 1995)..........................................................................6, 14

L.C. Baron, Inc. v. H.G. Caspari, Inc.,
   678 F. Supp. 100 (E.D. Pa. 1987) ...................................................................10

Lambton Mfg. Ltd. v. Young,
   No. 91-3499, 1992 WL 5275 (E.D. Pa. Jan. 10, 1992)...................................10

Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc.,
   992 F. Supp. 1014 (N.D. Ill. 1998) .................................................................16

LG Elecs., Inc. v. First Int'l Computer, Inc.,
   138 F. Supp. 2d 574 (D.N.J. 2001) ...............................................7, 10, 11, 12, 16

NCR Credit corp. v. Ye Seekers Horizon, Inc.,
   17 F. Supp. 2d 317 (D.N.J. 1998) ...................................................................10

Osteotech, Inc. v. Gensci Regeneration Sciences, Inc.,
   6 F. Supp. 2d 349 (D.N.J. 1998) .................................................7, 8, 9, 14, 15

Ricoh Co. v. Honeywell, Inc.,
   817 F. Supp. 473 (D.N.J. 1993) ....................................................7, 10, 11, 12, 15

Solomon v. Cont'l Am. Life Ins. Co.,
   472 F.2d 1043 (3d Cir. 1973)..........................................................................13

Stewart Org., Inc. v. Ricoh Corp.,
   487 U.S. 22 (1988).............................................................................................6

**STATUTES**

28 U.S.C. § 1391(c) .........................................................................................................7

28 U.S.C. § 1400(b) ......................................................................................................6-7

28 U.S.C. § 1404(a) ................................................................................................passim

## INTRODUCTION

On February 4, 2005, counsel for foreign plaintiff Eon-Net, L.P. ("Eon-Net") signed six identical complaints for patent infringement. Over the course of the following week, Eon-Net's counsel separately filed those complaints in two different venues – the District of New Jersey and the Southern District of New York. Although those venues happen to be near the offices of Eon-Net's counsel in Westfield, New Jersey, those venues have little – if any – connection to the subject matter of Eon-Net's allegations.

Eon-Net's counsel next proceeded to attempt to settle those cases less than three weeks following their filing. Eon-Net obviously expected to make a quick profit if the defendants it had accused of patent infringement would promptly settle the cases for the nominal amounts demanded rather than incur the expenses of litigation.

Unwilling to succumb to Eon-Net's questionable tactics, Defendant Flagstar Bank ("Flagstar")[1] is now in the position of having to defend a frivolous lawsuit. Under these circumstances, Eon-Net's counsel should not be afforded the benefits of litigating this matter in a forum convenient to him at the expense of not only judicial economy but also the convenience of Flagstar, the convenience of nearly every potentially relevant party witness, and the convenience of nearly every conceivable non-party witness.

## STATEMENT OF FACTS

Allegations of Patent Infringement.

In February 2005, Eon-Net, a Cayman Island Limited Partnership with its principal place of business in the British Virgin Islands (Complaint ¶ 1), brought this patent infringement suit against Flagstar Bancorp, a holding company organized under the laws of Michigan. Flagstar Bank is a federally chartered bank with its principal place

---

[1] Eon-Net has improperly brought suit against "Flagstar Bancorp" rather than "Flagstar Bank."

1

of business in Troy, Michigan and its west coast headquarters in Bellevue, Washington (Affidavit of Kristina Maritczak (the "Maritczak" Affidavit") ¶ 3). Flagstar is in the wholesale mortgage business and conducts a portion of its business through a web-based "e-mortgage" program. ( Id. ¶ 2.)

In its Complaint, Eon-Net alleged infringement of United States Patent Number 6,683,697 (the "'697 Patent"), entitled "Information Processing Methodology." (Complaint ¶ 10). The '697 Patent purports to describe an invention that:

> "provide[s] an application program interface which allows a user to select specific portions of information extracted from a diversity of hard copy documents and allows the user to direct portions of this information to several different users in accordance with the needs of the particular user." (Complaint Appendix 1, U.S. Patent No. 6,683,697, at col. 2 lns. 19-24.)

Specifically, Eon-Net has alleged that Flagstar infringes the '697 Patent by:

> "collecting information over the Internet pursuant to a claim of the '697 patent, and deploying for Defendant's own use an application distributed over the Internet in which information is collected and extracted from a customer of Defendant and processed on Defendant's server as defined by the claims of the '697 Patent." (Complaint ¶ 10.)

In a claim chart provided by Eon-Net on March 2, 2005, Eon-Net further comments that the alleged infringing activities conducted by Flagstar relate to the "Flagstar website," "information (such as customer contact information) entered into an HTML form that is displayed by a browser," and an "HTML form file transmitted via HTTP to a back-end process (application running on a web server)." (Maritczak Aff. ¶ 12 & Ex. A.)  Thus Eon-Net contends that the alleged infringement of the '697 Patent by Flagstar relates to some portion of the technology used by Flagstar to facilitate transactions initiated by customers using its e-mortgage website ("site technology").

Eon-Net's Litigation Strategy.

Eon-Net appears to be a patent holding company in the business of bringing patent infringement actions with the hope that defendants will "quickly settle" in order "to avoid the expense of litigation." (See, e.g., March 2, 2005 Letter from Jean-Marc Zimmerman to Flagstar, attached as Exhibit A to the Maritczak Affidavit; March 1, 2005 Letter from Jean-Marc Zimmerman to drugstore.com, inc., attached as Exhibit A to the Affidavit of Melissa J. Baily (the "Baily Affidavit"); March 4, 2005 Letter from Jean-Marc Zimmerman to CoolAnimalStuff.com, attached as Exhibit B to the Baily Affidavit.) Flagstar is the target of such tactics in this case.

In one week in February 2005, Eon-Net filed at least six substantively identical complaints against different defendants alleging infringement of the '697 Patent. Three of those complaints were filed in the Southern District of New York – namely the complaint against Redenvelope, Inc. in Civil Case Number 1:05-cv-1954-LMM (attached as Exhibit C to the Baily Affidavit), the complaint against ING Bank in Civil Case Number 1:05-cv-2049-LAK (attached as Exhibit D to the Baily Affidavit), and the complaint against Random House, Inc. in Civil Case Number 7:05-cv-1977-WCC (attached as Exhibit E to the Baily Affidavit).

Three complaints were also filed in the District of New Jersey – namely, the complaint in the above-captioned matter involving Flagstar, the complaint against CoolAnimalStuff.com in Civil Case Number 2:05-cv-936 (attached as Exhibit F to the Baily Affidavit), and the complaint against drugstore.com, inc. in Civil Case Number 2:05-cv-845 (attached as Exhibit G to the Baily Affidavit). Flagstar, NeonGecko.com

3

Inc. (the business entity that owns and operates the CoolAnimalStuff.com website), and drugstore.com, inc. are each currently represented by the undersigned counsel.

Almost immediately after filing each of the three complaints in the District of New Jersey, Eon-Net proposed settlement. Specifically, Eon-Net

> "offer[ed] [each Defendant] the opportunity to avoid the expense of litigation and quickly settle this matter according to the following reasonable schedule under which the settlement amount is based on [each Defendant's] annual web-based sales as follows:
>
> | Settlement Amount | Your Annual Web-Based Sales |
> |---|---|
> | $25,000.00 | < $3,000,000 |
> | $50,000.00 | $3M to $20M |
> | $75,000.00 | $20M to $100M" |

(See, e.g., March 2, 2005 Letter from Jean-Marc Zimmerman to Flagstar, attached as Exhibit A to the Maritczak Affidavit; March 1, 2005 Letter from Jean-Marc Zimmerman to drugstore.com, inc., attached as Exhibit A to the Baily Affidavit; March 4, 2005 Letter from Jean-Marc Zimmerman to CoolAnimalStuff.com, attached as Exhibit B to the Baily Affidavit.) Eon-Net's attempts to settle numerous cases immediately and for nominal amounts is clearly indicative of Eon-Net's business plan and strategy – namely, to quickly profit by betting that individual defendants will choose settlement over the more expensive option of defending a meritless lawsuit. Flagstar is not willing to acquiesce in this tactic.

The Center of Gravity of This Case.

Eon-Net – a foreign corporation with seemingly no business activities except the holding, licensing, and litigating of its patents – has no ties to New Jersey. Moreover, with no consideration for judicial economy, Eon-Net chose to separately institute at least six substantively identical actions in the District of New Jersey and the Southern District

of New York. Eon-Net's choice of forum – at least with respect to the three cases filed in the District of New Jersey – is wholly inappropriate.

Indeed, for each of the three cases filed in the District of New Jersey in February 2005, the center of gravity lies outside of New Jersey.[2] Specifically in relation to this action instituted against Flagstar, all of the events, witnesses, and documents relating to the alleged infringement are located in Washington, Michigan, and California. For example: the Flagstar employees who operate Flagstar's web-based e-mortgage program are located in Flagstar's two headquarters in Bellevue, Washington and Troy, Michigan (Maritczak Aff. ¶ 9); much of Flagstar's site technology was developed by Kofax Image Products, Inc. ("Kofax"), a Delaware corporation with its principal place of business in California (id. ¶ 9); and the documents relating to Flagstar's site technology are located in Washington, California, and Michigan (id. ¶ 9).

Under these circumstances – where the parties and subject matter of the action have no connection to the District of New Jersey – transfer of venue to a forum with some connection to the subject matter of the dispute and at least one party is particularly warranted.

## ARGUMENT

### I.   RELEVANT STANDARDS.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts have broad discretion to decide

---

[2] Motions to transfer have already been filed in Eon-Net, L.P. v. drugstore.com, inc., Civil Case Number 2:05-cv-845-JCL-MF, and in Eon-Net, L.P. v. CoolAnimalStuff.com, Civil Case Number 2:05-cv-936-DMC-MF. (Baily Aff. Exs. H & I.)

5

motions to transfer under Section 1404(a), and such motions should be adjudicated "according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citing Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); see also Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (adopting the approach of considering "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum") (internal quotation marks and citations omitted).

## II. THIS ACTION SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF WASHINGTON.

This action should be transferred to the Western District of Washington because (1) as a preliminary matter, this action could have been brought in the Western District of Washington, (2) all but one of the factors that guide this Court's discretion as exercised under Section 1404(a) weigh heavily in favor of litigating this action in Washington, and (3) no such factors weigh against litigating this action in Washington.

### A. This Action "Might Have Been Brought" in the Western District of Washington.

As required by section 1404(a), this action could have been brought in the Western District of Washington. In a patent infringement action, proper venue is defined by 28 U.S.C. § 1400(b) as any "district where the defendant resides." Defendant Flagstar resides in the Western District of Washington because it has maintained its west coast headquarters in that district since 1994 (Maritczak Aff. ¶ 4) and was thus subject to personal jurisdiction in the Western District of Washington at the time this action was

commenced. See 28 U.S.C. § 1391(c). Hence, the Western District of Washington is a proper venue for this action.

      B.    This Court Should Exercise Its Discretion To Transfer this Action "for the Convenience of the Parties and Witnesses, in the Interest of Justice."

This Court considers two broad categories of factors in determining whether the transfer of an action to another district is appropriate. One category includes factors relating to the "private interests of the parties in the context of the litigation," such as the locus of operative facts or center of gravity, the plaintiff's choice of forum, the convenience of the witnesses, the convenience of the parties, the location of relevant documents, and the relative disruption to the parties' businesses. See, e.g., LG Elecs., Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 589-91 (D.N.J. 2001); Osteotech, Inc. v. Gensci Regeneration Scis., Inc., 6 F. Supp. 2d 349, 357 (D.N.J. 1998); Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 480-86 (D.N.J. 1993). The other category consists of factors relating to the "public interest in the administration of courts and the adjudication of cases," such as local interests in having cases adjudicated at home, placing the burden of jury duty on those having the closest ties to the action, and court congestion and other administrative difficulties. See, e.g., LG Elecs., 138 F. Supp. 2d at 592-93; Osteotech, 6 F. Supp. 2d at 357; Ricoh, 817 F. Supp. at 486-87.

As described in detail below (see infra section II.B.1), the private interest factors weigh heavily in favor of transfer. The "locus of operative facts" or "center of gravity" factor is of prime importance in patent infringement cases and here militates in favor of transfer. (See infra section II.B.1.a.) All of the additional private interest factors also support transfer except for one – the plaintiff's choice of forum – which, as detailed below, should be accorded little if any weight. (See infra section II.B.1.b.) Moreover,

7

every public interest factor weighs in favor of transfer. (See infra section II.B.2.) Thus, under the circumstances of this case, the Section 1404(a) balance is overwhelmingly weighted in favor of transfer to the Western District of Washington.

        1.      **The Private Interests of the Parties Weigh In Favor of Transfer.**

            a.      <u>The locus of operative facts weighs strongly in favor of transfer.</u>

It is well established that "in patent infringement actions, as a general rule, the preferred forum is that which is the *center of gravity* of the accused activity." See, e.g., Osteotech, 6 F. Supp. 2d at 357 (internal quotation marks and citation omitted) (emphasis in original). The rationale underlying this rule is that "a district court ought to be as close as possible to the milieu of the [alleged] infringing [activity]." Id. (internal quotation marks and citation omitted). Here, there are two "hubs of activity" relevant to the alleged infringing activity, one of which is Flagstar's west coast headquarters in Bellevue, Washington.

As described above, this action involves claims for infringement of the '697 Patent. The issues relating to the alleged infringement, as articulated by Eon-Net in its Complaint, involve certain alleged activities conducted by Flagstar such as "collecting information over the Internet" and "deploying an application distributed over the Internet in which information is collected and extracted from a customer . . . and processed on Defendant's server." (Complaint ¶ 10.)

The activities alleged by Eon-Net – if they occurred at all – occurred in Washington and Michigan, not in New Jersey. For example, the Flagstar employees who operate Flagstar's web-based e-mortgage program are located in Washington and

Michigan. (Maritczak Aff. ¶¶ 9-10.) In addition, Flagstar maintains its internal computer servers in Washington and Michigan. (Id. ¶ 11.) Indeed, nearly all of the business operations supporting Flagstar's e-mortgage program occur in Washington and Michigan. (Id. ¶¶ 5-11.)

In contrast, New Jersey has no meaningful connection to the alleged infringing activity. Although mortgage products may be purchased through Flagstar's internet site by consumers located in all fifty states including New Jersey, "sales activity without more" is insufficient to tie a patent infringement action to a particular forum. E.g., Osteotech, 6 F. Supp. 2d at 358; Acterna, L.L.C. v. Adtech, Inc., 129 F. Supp. 2d 936, 938 (E.D. Va. 2001); see also, e.g., Invivo Research, Inc. v. Magnetic Resonance Equip. Corp., 119 F. Supp. 2d 433, 438-39 (S.D.N.Y. 2000) (discounting plaintiff's contention that venue for a patent infringement action is appropriate where "[t]he sole connection between the action and the [venue] is the sale of a minute percentage of the accused products and the location of plaintiff's counsel").

Accordingly, the general rule that patent infringement actions should be litigated in a forum in which alleged infringing activity occurred should be applied here. Alleged infringing activity occurred in Washington and Michigan, not in New Jersey. Accordingly, Flagstar's motion to transfer this action to the Western District of Washington should be granted.

     b. Eon-Net's choice of forum should be accorded little – if any – weight.

Although it is often appropriate to give deference to a plaintiff's choice of forum in an analysis under Section 1404(a), plaintiff's choice is only one of many factors to be

balanced, and moreover, here there are several circumstances that greatly diminish any weight to be accorded to Eon-Net's choice of a New Jersey forum.

First, it is "well-established that a plaintiff's choice of forum is afforded less deference when the plaintiff has chosen a foreign forum." Ricoh, 817 F. Supp. at 480; see also, e.g., LG Elecs., 138 F. Supp. 2d at 589 (noting that a "plaintiff's choice [of forum] is accorded less weight when the chosen forum is not the plaintiff's home forum"); NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp. 2d 317, 321 (D.N.J. 1998). Some courts expressly hold that no deference at all is to be given to a plaintiff's choice of forum in cases involving a foreign plaintiff and an American defendant. See, e.g., Lambton Mfg. Ltd. v. Young, No. 91-3499, 1992 WL 5275, *2 (E.D. Pa. Jan. 10, 1992) (noting that when "one of the parties is foreign, the citizen party's district is favored over the foreign plaintiff's choice of forum"); L.C. Baron, Inc. v. H.G. Caspari, Inc., 678 F. Supp. 100, 103 (E.D. Pa. 1987) (acknowledging that the policy supporting preference to plaintiff's choice of forum does not exist in cases brought by foreign plaintiffs with no home venue in the United States).

The plaintiff here – Eon-Net – is a foreign entity organized under the laws of the Cayman Islands with its principal place of business in the British Virgin Islands. (Complaint ¶ 1.) Moreover, Eon-Net does not appear to maintain any offices or facilities in New Jersey. Accordingly, Eon-Net's selection of a New Jersey forum should be accorded little – if any – weight in the Court's analysis, as Eon-Net "is not on its home turf in New Jersey." Ricoh, 817 F. Supp. at 481 (internal quotation marks and citation omitted).

Second, "[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference." Id.; LG Elecs., 138 F. Supp. 2d at 590. "This is especially true in patent infringement cases," in which the operative events surrounding the alleged infringement typically occur in one or more of a defendant's home districts. LG Elecs., 138 F. Supp. 2d at 590. Because, as described above (see supra section II.B.1.a), the alleged infringement here occurred in Washington and Michigan, Eon-Net's selection of a New Jersey forum should be accorded minimal consideration.

Thus, whatever weight a plaintiff's choice of forum might otherwise be given in the Section 1404(a) balance, in this case, as a matter of law, plaintiff's selection must be given little or no weight. Ricoh, 817 F. Supp. at 481.

   c. <u>Convenience of the witnesses favors transfer.</u>

The convenience of the witnesses in this matter would be maximized by the transfer of this action to Washington. Again, because the primary focus of this patent infringement action will be on the alleged infringing activities of Flagstar, a majority of the material witnesses in this action will be Flagstar employees. Conversely, few Eon-Net witnesses will have material information regarding this action, and those witnesses that do have such information will be inconvenienced equally regardless whether the matter is litigated in this forum or in Washington.

Flagstar personnel who will likely be deposed and possibly testify at trial include those employees who are familiar with Flagstar's e-mortgage system and its operations. These employees work full time at Flagstar's Washington and Michigan headquarters. (Maritczak Aff. ¶ 9.) For example, Kelly Cruz, Flagstar's Senior Vice President of

National Wholesale Sales and Operations, is employed full-time at Flagstar's operations center in Washington. (Id. ¶ 10.)

Potentially relevant non-party witnesses in this action are also located on the west coast. For example, employees of Kofax, the company that developed Flagstar's site technology, are located in California. (Id. ¶ 8.)

On the other hand, there are no Eon-Net employees who are believed to reside in this district, as Eon-Net is a foreign entity with seemingly no connection to New Jersey. Thus, by choosing to bring this litigation in New Jersey, Eon-Net has already created a situation in which its employee witnesses will be required to travel in order to provide testimony in this matter. See LG Elecs., 138 F. Supp. 2d at 591 (adopting the position that "if a particular party's witnesses must travel . . . no matter where the action is lodged, then the inconvenience of these witnesses is of less importance"); see also Ricoh, 817 F. Supp. at 484. As a result, witnesses will be best accommodated by transfer of this action to Washington.

d.  Convenience of the parties favors transfer.

Likewise, consideration of the convenience of the parties clearly favors transfer. Because Eon-Net has no connection to this district, Eon-Net's convenience is unlikely to be impacted in any significant way by a change in forum. As a foreign entity, Eon-Net would not be deprived of the convenience of litigating on one's "own turf" should the action be transferred. Indeed, the only possible convenience to Eon-Net of having this action litigated in New Jersey is that its counsel is located here; however, this Court has recognized that mere inconvenience to counsel is not an appropriate factor to consider on

12

a motion to transfer venue. Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973).

Moreover, a motion to transfer to the Western District of Washington has already been filed in two actions nearly identical to this one – Eon-Net, L.P. v. drugstore.com, inc., Case No. 2:05-cv-845-JCL-MF and Eon-Net, L.P. v. CoolAnimalStuff.com, Case No. 2:05-cv-936-DMC-MF. The alleged infringing activities engaged in by the defendants in those cases transpired entirely in Washington. (See Brief in Support of drugstore.com, inc.'s Motion To Transfer Venue Pursuant to 28 U.S.C. § 1404(a), attached to the Baily Affidavit as Exhibit H; Brief in Support of NeonGecko.com Inc.'s Motion To Transfer Venue Pursuant to 28 U.S.C. § 1404(a), attached to the Baily Affidavit as Exhibit I.) If the actions against drugstore.com, inc. and CoolAnimalStuff.com are transferred to the Western District of Washington – as they should be – then Eon-Net's convenience will be served by transfer of this action as well.

Flagstar, on the other hand, would be greatly inconvenienced by litigating this action in New Jersey: Flagstar's relevant operations, employees, and records are not located in New Jersey; and, access to Kofax's California operations, employees, and records would be impeded by litigating in New Jersey. Accordingly, the convenience of the parties weighs in favor of transferring this action to Washington.

    e. <u>Location of relevant documents favors transfer.</u>

Similarly, the location of relevant documents supports transfer. Since the primary focus of this infringement action will be on Flagstar's alleged infringing technology, which was designed by Kofax (Maritczak Aff. ¶ 8), the majority of the relevant documents will likely be produced by Flagstar and Kofax. Such documents include those

relating to the design of Flagstar's information technology and those relating to Flagstar's operation of that technology. These documents are located in Washington, California, and Michigan – not New Jersey. (Maritczak Aff. ¶¶ 8, 9.)

Other pertinent documents will likely include the patents in suit, documents concerning the conception and reduction to practice of the claimed inventions, and documents establishing Eon-Net's title to the patent. This handful of documents is either publicly available from the United States Patent and Trademark Office or most likely located in the Cayman Islands or the Virgin Islands. Thus, because Eon-Net will have to relocate its relevant documents regardless of forum and because Flagstar's and Kofax's relevant documents are located primarily on the west coast, transfer is appropriate.

      f. <u>Disruption to business activities weighs in favor of transfer.</u>

Another factor that militates in favor of transfer is "that it will be substantially less disruptive to the business activities of [Flagstar] if this action is tried in [Washington] rather than in New Jersey." <u>Osteotech</u>, 6 F. Supp. 2d at 359. Many of the potential witnesses in this matter are Flagstar employees who are essential to the day-to-day operations of Flagstar's web-based e-mortgage business. (Maritczak Aff. ¶¶ 6, 9, 10.) If this action were transferred, those witnesses would be able to attend to their duties in Flagstar's Washington offices while participating in the litigation. Eon-Net, on the other hand, as a patent holding company, appears to have no business operations other than pursuing litigation related to its patent portfolio. Thus, this factor also counsels in favor of transfer.

### 2. The Public Interest in the Administration of Courts and the Adjudication of Cases Weighs in Favor of Transfer.

a. <u>Consideration of local interests favors transfer.</u>

Washington's "compelling interest in regulating the conduct of businesses in its state" further favors transfer. <u>Ricoh</u>, 817 F. Supp. at 486. Flagstar maintains its west coast headquarters in Washington and much of the alleged culpable conduct occurred in Washington. As a result, Washington has a strong public interest in adjudicating this dispute whereas New Jersey has little if any interest in adjudicating this dispute.

b. <u>Imposition of jury duty favors transfer.</u>

The burden of jury duty "ought not to be imposed upon the people of a community which has no relation to the litigation." <u>Ferens v. John Deere Co.</u>, 494 U.S. 516, 529-30 (1990); <u>Osteotech</u>, 6 F. Supp. 2d at 359. Accordingly, New Jersey jurors should not be burdened with adjudicating a matter concerning allegations of patent infringement stemming from alleged conduct largely localized in Washington and Michigan.

c. <u>Congestion of courts favors transfer.</u>

There is a significant difference in the congestion of the docket of the United States District Court for the District of New Jersey and the United States District Court for the Western District of Washington. For the year ending September 30, 2004 – and for each of the three preceding years – the median time from filing to trial in civil cases was a minimum of one full year longer in the District of New Jersey as compared with the Western District of Washington.[3] (Administrative Office of the United States Courts,

---

[3] For the year ending September 30, 2004, the median time from filing to trial in civil cases was 33.4 months in the District of New Jersey as compared to 16.4 months in the

Federal Court Management Statistics.) See LG Elecs., 138 F. Supp. 2d at 593 n.15 (noting that "in determining which district is more congested, relevant statistics" include the "median months from filing to trial"); see also Law Bulletin Publ'g Co. v. LRP Publ'ns, Inc., 992 F. Supp. 1014, 1020 (N.D. Ill. 1998). As a result, this matter would be more efficiently resolved in the Western District of Washington than in the District of New Jersey.

### III.   THIS ACTION SHOULD BE TRANSFERRED OUT OF THE DISTRICT OF NEW JERSEY.

For the reasons stated above, this action should be transferred to the Western District of Washington. Alleged infringing activity occurred in that district, Flagstar maintains one of its two headquarters and operations centers in that district, and two additional identical cases are entirely localized in that district. The District of New Jersey, on the other hand, has no connection to the parties, witnesses, or subject matter involved in this case.

If, however, this Court decides for any reason that the Western District of Washington is not a suitable forum for this action, this case should be transferred to the Eastern District of Michigan – which is the site of Flagstar's national headquarters and the site of much of the allegedly infringing activity described in foreign plaintiff Eon-Net's complaint. There is little if any benefit – to the parties, to the witnesses, to the

---

Western District of Washington – a difference of 17 months. For the year ending September 30, 2003, the median time from filing to trial in civil cases was 33.8 months in the District of New Jersey as compared to 16.7 months in the Western District of Washington – a difference of 17.1 months. For the year ending September 30, 2002, the median time from filing to trial in civil cases was 30.0 months in the District of New Jersey as compared to 18.0 months in the Western District of Washington – a difference of 12 months.

Court, or to the community – of litigating this action in the District of New Jersey over fora such as the Western District of Washington or the Eastern District of Michigan.

## CONCLUSION

For the foregoing reasons, Flagstar respectfully requests that this Court grant its motion to transfer this action to the Western District of Washington, or alternatively to the Eastern District of Michigan.

Dated: June 24, 2005

                                              /s/
                                 Richard I. Samuel (RIS-2197)
                                 GOODWIN PROCTER LLP
                                 103 Eisenhower Parkway
                                 Roseland, New Jersey 07068
                                 Telephone: (973) 994-7892

                                 Attorneys for Defendant Flagstar Bancorp

Charles K. Verhoeven (CKV-5119)
Melissa J. Baily (MJB-7883)
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Jon Steiger (JS-9884)
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Of Counsel to Defendant Flagstar Bancorp